APPEAL No. 24-3124

# United States Court of Appeals for the Third Circuit

---

FIRST CHOICE WOMEN'S RESOURCE CENTERS, INC.,

*Plaintiff-Appellant,*

v.

MATTHEW PLATKIN, in his official capacity as Attorney General of the State of New Jersey,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the District of New Jersey
Case No.: 3:23-cv-23076

---

**EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**
**RULE 27.7 EXPEDITED CONSIDERATION REQUESTED**

---

ERIK C. BAPTIST
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4789
ebaptist@ADFlegal.org

ERIN M. HAWLEY
LINCOLN DAVIS WILSON
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-86902
ehawley@ADFlegal.org
lwilson@ADFlegal.org

*Counsel for Plaintiff-Appellant First Choice Women's Resources, Inc.*

## CORPORATE DISCLOSURE STATEMENT

First Choice Women's Resource Centers, Inc., incorporated as a 501(c)(3) faith-based organization under the laws of New Jersey, is neither a subsidiary nor a parent company of any other corporation under the laws of the United States and no publicly traded corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS

Table of Authorities ................................................................. iii

Introduction ............................................................................. 1

Background ............................................................................... 3

    A.    The Attorney General serves an oppressive Subpoena. .......... 3

    B.    District court refuses to decide the case. ............................... 5

    C.    State court refuses to decide the constitutional claims. ......... 6

    D.    This Court finds the case ripe and grants remand. ................ 7

    E.    Attorney General seeks sanctions in state court. ................... 8

    F.    The district court finds the case still is not ripe. ................... 8

Argument ................................................................................. 9

I.    First Choice has an imminent, irreparable injury. ....................... 10

II.    First Choice will likely prevail on appeal. ................................... 13

    A.    The Subpoena fails exacting scrutiny. ................................ 13

    B.    The Attorney General is hostile to pregnancy centers. ........ 17

    C.    Undecided federal objections preclude enforcement. .......... 19

III.    The balance of harms favors an injunction. ................................. 22

Conclusion .............................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Amalgamated Transit Union Location 85 v. Port Authority of Allegheny County,*
39 F.4th 95 (3d Cir. 2022) ............................................................ 26

*Arbaugh v. Y&H Corp.,*
546 U.S. 500 (2006) ................................................................... 13

*Brown v. City of Pittsburgh,*
586 F.3d 263 (3d Cir. 2009) ........................................................ 19

*Crane v. Kentucky,*
476 U.S. 683 (1986) ................................................................... 22

*Elrod v. Burns,*
427 U.S. 347 (1976) ............................................................... 11, 12

*Federal Election Commission v. Florida for Kennedy Committee,*
681 F.2d 1281 (11th Cir. 1982) ................................................... 22

*First Choice Women's Resource Centers, Inc. v. Platkin,*
No. 23-23076, 2024 WL 1550096 (D.N.J. Jan. 12, 2024) ................. 6

*Gibson v. Florida Legislative Investigation Committee,*
372 U.S. 539 (1963) ................................................................... 22

*In re First Choice Women's Resource Centers, Inc.,*
No. 23-941, 2024 WL 2116515, (U.S. Mar. 29, 2024) ................ 6, 23

*In re Revel AC, Inc.,*
802 F.3d 558 (3d Cir. 2015) .................................................... 11, 26

*John Doe No. 1 v. Reed,*
561 U.S. 186 (2010) ................................................................... 16

*Knick v. Township of Scott,*
588 U.S. 180 (2019) ................................................................... 11

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corporation,*
    337 F.3d 314 (3d Cir. 2003) ............................................................ 23

*Mortgagelinq Corporation v. Commonwealth Land Title Insurance Company,*
    662 A.2d 536 (N.J. 1995) ............................................................... 23

*National Association for the Advancement of Colored People v. State of Alabama, ex rel. Patterson,*
    357 U.S. 449, 460 (1958) ................................................... 15, 18, 25

*National Rifle Association of America v. Vullo,*
    144 S.Ct. 1316 (2024) ................................................................. 3, 20

*Perry v. Schwarzeneggar,*
    591 F.3d 1147 (9th Cir. 2010) ................................................... 18, 19

*Platkin v. Smith & Wesson Sales Company,*
    289 A.3d 481 (App. Div. 2023) ........................................................ 7

*Reilly v. City of Harrisburg,*
    858 F.3d 173 (3d Cir. 2017) ........................................................... 14

*Roberts v. United States Jaycees,*
    468 U.S. 609 (1984) ....................................................................... 15

*Smith & Wesson Brands, Inc. v. Attorney General of the State of New Jersey,*
    27 F.4th 886 (3d Cir. 2022) ......................................................... 5, 7

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ....................................................................... 13

*Transamerica Insurance Company v. National Roofing, Inc.,*
    527 A.2d 864 (1987) ....................................................................... 24

*Watkins v. Resorts International Hotel & Casino, Inc.,*
    591 A.2d 592 (1991) ....................................................................... 24

*Watkins v. United States*,
　　354 U.S. 178 (1957) ........................................................................22

*Winter v. Natural Resources Defense Council, Inc.*,
　　555 U.S. 7 (2008) ............................................................................10

## **Statutes**

N.J. STAT. ANN. § 56:8-6 ........................................................................12

## **Other Authorities**

Attorney General Rob Bonta, Open Letter from Attorneys General
　　Regarding CPC Misinformation and Harm, State of California
　　Office of the Attorney General (Oct. 23, 2023),
　　http://bit.ly/3CtAShf ........................................................................4

# INTRODUCTION

First Choice Women's Resource Centers brought this case to challenge an unconstitutional investigatory Subpoena from New Jersey Attorney General Matthew Platkin that, among other things, demands that First Choice disclose the identity of nearly 5,000 of its donors, in direct contravention of Supreme Court precedent. The case returns to this Court after the district court refused sua sponte to decide First Choice's claims for being unripe.

But the Attorney General has already conceded First Choice's claims are ripe during the appeal from the district court's first sua sponte dismissal of this case. And this Court agreed, which is why it dismissed that prior appeal as moot and remanded it to the district court "to address any requests for injunctive relief in the first instance." *See First Choice v. Platkin*, 24-1111, Dkt.56 (3d Cir. July 9, 2024). But instead of addressing First Choice's request, the district court sat on First Choice's renewed motion for preliminary injunction for four months—until earlier this week, when the court again denied an injunction and dismissed the case sua sponte as unripe. To prevent immediate irreparable harm from the district court not deciding the merits of the motion, First Choice now moves for an injunction pending appeal and seeks expedited consideration under Third Circuit Rule 27.7.

First Choice plainly faces imminent, irreparable harm from the Attorney General's demands—backed by the threat of sanctions—for the

identity of First Choice's donors and other confidential, sensitive information, including ten years of internal communications. Plus, a state-court judge has held that Subpoena is enforceable under state law, but without deciding any of First Choice's constitutional claims. Now, the Attorney General is moving to force First Choice to disclose the names of nearly 5,000 donors and provide him with other confidential, sensitive information under his Subpoena. The state trial court has set that motion for a hearing on **November 19**, and the New Jersey Appellate Division is requiring the trial court decide the motion by **December 2**. That means First Choice may soon be compelled to turn over this information—which the First Amendment's freedom of association protects—without receiving any hearing on its constitutional claims. The district court's conclusion that First Choice still has no imminent, cognizable harm cannot be reconciled with these undisputed facts.

What's more, First Choice is likely to succeed on its First Amendment claims. In particular, the Attorney General's demand for donor disclosure falls far short of the "exacting scrutiny" standard set by *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021). If the state trial court compels First Choice to disclose its donors' identities to the Attorney General before First Choice ever gets a hearing on those or any other constitutional claims, it will be impossible to unring the bell. And while the Attorney General has portrayed himself as acting out of earnest concern for First Choice's donors, he has publicly castigated

pregnancy centers in an open letter and a purported "consumer alert" that Planned Parenthood helped him draft. An injunction is thus all the more important because, as the Supreme Court recently recognized in *National Rifle Association of America v. Vullo*, such actions suggest the Attorney General is using "the power of the State to punish or suppress disfavored expression." 144 S.Ct. 1316, 1326 (2024).

This egregious overreach has continued far too long and demands a prompt remedy. This Court should enter an injunction pending appeal.

## BACKGROUND

### A.     The Attorney General serves an oppressive Subpoena.

First Choice is a faith-based, pro-life nonprofit that provides free health services at five facilities around New Jersey to women experiencing unplanned pregnancies. Add.004–005. The Attorney General, a staunch abortion activist, has targeted such centers—he joined an open letter by state attorneys general pledging to enforce consumer protection laws against pregnancy centers, and he asked Planned Parenthood to help him draft a consumer alert warning New Jerseyans about such centers. Attorney General Rob Bonta, Open Letter from Attorneys General Regarding CPC Misinformation and Harm, State of California Office of the Attorney General (Oct. 23, 2023), http://bit.ly/3CtAShf; Add.036–044.

He put that consumer protection plan into practice by serving the Subpoena. Add.045. He issued the Subpoena under three state statutes,

but he cited no consumer complaint or other evidence of wrongdoing. Add.045–67. The Subpoena requires First Choice to disclose documents from over a ten-year period related to a host of topics, including First Choice's communications, marketing, internal procedures, personnel, and associations.

Most concerning, the Subpoena demands that First Choice identify nearly half of its donors, Add.060, some 5,000 in total. On the unsupported theory that some donors may have given to First Choice on the mistaken belief that this pro-life pregnancy center was a pro-abortion organization, the Attorney General demands that First Choice identify all its donors except those who gave through a specific donation portal. *Id.* That demand—which embraces nearly half of First Choice's donations by number and 70% by amount—seeks the identities of the donors who gave at First Choice's benefit dinners, through church baby-bottle campaigns, or who gave a gift of stock. Add.215–16.

Several donors whose names are subject to that demand submitted an anonymous declaration stating that they were not deceived by First Choice, and they do not want their identities known by a hostile state official. Add.102–106. What's more, the Attorney General has never explained what he plans to do with the identities of First Choice's donors–for example, whether he wants to contact each donor and interrogate them about why they donated to First Choice. First Choice seeks to

protect its freedom of association with these donors, lest they decide to cease their relationship with First Choice.

## B.    District court refuses to decide the case.

First Choice "petitioned a federal court to adjudicate its rights and obligations" under the Subpoena. *Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 892 (3d Cir. 2022). First Choice asserted that the Subpoena violated its speech, religion, and association rights under the First Amendment—including as an example of retaliation and selective enforcement—as well as its rights under the Fourth Amendment. Add.001–035. At the same time, First Choice sought a temporary restraining order and a preliminary injunction, which the Attorney General opposed on the merits.

Though the parties had briefed the merits of First Choice's constitutional challenge, the district court denied the motion and dismissed the case sua sponte for lack of jurisdiction. The court stated there was "no *current* consequence for resisting the subpoena" and that "the same challenges" could be "raised in state court." *First Choice Women's Res. Ctrs., Inc. v. Platkin*, No. 23-23076, 2024 WL 1550096 at *4 (D.N.J. Jan. 12, 2024). The district court concluded that it lacked jurisdiction until "the state court enforces the Subpoena." *Id.* But the district court also acknowledged that this meant that a federal challenge to a subpoena would "seldom if ever be ripe" because "res judicata principles will likely bar a plaintiff from filing a claim in federal court"

after the state-court adjudication. *Id.* at *5 n.7. First Choice immediately appealed and sought equitable relief pending appeal, which this Court and the Supreme Court denied. *First Choice*, 24-1111, Dkt.20, 29; *In re First Choice Women's Res. Ctrs., Inc.*, No. 23-941 (U.S. May 13, 2024).

## C.    State court refuses to decide the constitutional claims.

That turned the focus to state-court enforcement proceedings, where the parties briefed and argued First Choice's federal objections extensively. Yet the state court, also acting sua sponte, declined to reach those issues, finding them "premature." Add.070. Despite First Choice's showing of an imminent threat to its associational rights and irreparable harm to its speech and religious expression, the state court still held "that there are no ripe constitutional arguments" in this case. Add.077–080, 087 (quoting *Platkin v. Smith & Wesson Sales Co.,* 289 A.3d 481 (App. Div. 2023)). The state court made clear that First Choice "has preserved" its constitutional claims to raise at some other stage, as well as its objections to the Subpoena's scope. *Id.* at 14 (quoting *Platkin*, 289 A.3d 481). But it still enforced the Subpoena, "granting the relief sought by the plaintiff in full." *Id.* at 17.

The state court directed First Choice to "respond fully" to the Subpoena within 30 days. Add.194. First Choice complied with that order as required by N.J. R. Ct. 4:18-1(b)(2), (4) by serving written responses and objections and producing documents (a total of nearly 3,000 pages). First Choice preserved its state-law scope objections—which also cover

the donor list—for conferral with the Attorney General. First Choice also filed an appeal to the Appellate Division and requested that the state court defer any further compliance with the Subpoena until the federal courts decided its federal constitutional claims.

### D.    This Court finds the case ripe and grants remand.

In the wake of the threat posed by the state court's order, First Choice filed a renewed motion for injunction pending appeal. *First Choice*, 24-1111, Dkt.49. But the Attorney General filed his own motion asking this Court instead to remand the case to the district court because "all agree the claims are ripe now, and that [First Choice] may re-initiate proceedings in district court." *First Choice*, 24-1111, Dkt.50 at 2. This Court granted the Attorney General's motion, observing that "[b]ased on subsequent developments in state court, it is now undisputed that Appellant's claims are ripe." *First Choice*, 24-1111, Dkt.56. It therefore dismissed the appeal "as moot" so the district court could "address any requests for injunctive relief in the first instance." *Id.*

Upon remand in July, First Choice filed a renewed emergency motion for TRO and preliminary injunction. The district court set an expedited briefing schedule for that motion, with briefing complete by early August. But it did not issue a TRO, and it did not rule on First Choice's motion for almost four months.

### E.    Attorney General seeks sanctions in state court.

Meanwhile, the Attorney General filed a state-court motion that sought to compel compliance with all the demands in his Subpoena. Previously, the Attorney General had agreed to confer on scope and acknowledged that the trial court held there were "no ripe" constitutional claims. Add.080. But then the Attorney General pivoted to the opposite position: that the trial court had rejected the constitutional claims on the merits and overruled First Choice's scope objections such that First Choice must immediately comply with the full scope of his Subpoena. Add.191–212. The trial court declined to rule on that motion while First Choice's state-court appeal was pending, so the Attorney General moved the Appellate Division to temporarily remand the case back to the trial court to force it to decide his motion. The Appellate Division granted that motion and required the trial court to rule on the Attorney General's compliance motion by **December 2, 2024**, Add. 228, and the trial court has set the motion for hearing on **November 19, 2024.**

### F.    The district court finds the case still is not ripe.

It was not until November 12, 2024—after the Appellate Division ordered First Choice's appeal be remanded to decide the Attorney General's motion—that the district court issued its decision on First Choice's motion for a TRO and a preliminary injunction. It denied First Choice's motion and dismissed the case because it found again—in conflict with this Court's order—that the case was not yet ripe. First

Choice appealed the following day and requested an injunction pending appeal, which the district court denied. Add. 271. First Choice now seeks that relief from this Court.

## ARGUMENT

The parties previously agreed in this Court that First Choice is entitled to an adjudication of its constitutional claims in federal court. Despite that, the Attorney General continues to press for First Choice to give up its constitutionally protected documents before that adjudication ever happens. That would irreparably harm all of First Choice's First Amendment rights, but most significantly, its right to the confidentiality of its associations with donors. First Choice squarely presented this objection to the state court and the Attorney General opposed, yet the state court refused to decide it, even while ordering enforcement of the Subpoena. And despite that enforcement order, the district court held that this case is still not ripe.

Thus, to prevent harm to First Choice's unadjudicated associational rights, this Court should enjoin the Attorney General from enforcing the Subpoena pending appeal. An injunction requires an applicant to show it is likely to succeed on the merits, that it faces irreparable harm without an injunction, and that the balance of harms and public interest are in its favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Or if irreparable harm to the movant so "decidedly outweighs any potential harm" to the opposing party, the Court need only find "serious questions

going to the merits" to grant an injunction. *In re Revel AC, Inc.*, 802 F.3d 558, 570 (3d Cir. 2015) (quotation omitted). First Choice meets both standards.

## I.    First Choice has an imminent, irreparable injury.

Unless this Court grants an injunction, First Choice will experience irreparable harm. The Attorney General's Subpoena threatens all the constitutional freedoms raised in First Choice's verified complaint—the First Amendment's freedom of speech, religion, and association, and the Fourth Amendment's protections. Add.001–035; *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (plurality op.). The Supreme Court has rejected the notion that any state-court proceedings are necessary to ripen a section 1983 action. *Knick v. Township of Scott*, 588 U.S. 180, 189 (2019). And there is no question that First Choice has had a ripe constitutional injury ever since the state court enforced the Subpoena. Indeed, it was because of those "subsequent developments in state court," which had made ripeness "undisputed," that this Court dismissed First Choice's prior appeal "as moot" so the district court could consider injunctive relief "in the first instance." *First Choice v. Platkin*, 24-1111, Dkt.56 (3d Cir. July 9, 2024).

That undisputed injury to First Amendment freedoms "unquestion-ably constitutes irreparable injury." *Elrod*, 427 U.S. at 373 (plurality op.). While that is true for all of First Choice's speech and religious freedom claims, the consequences of this harm are most clear in the Attorney

General's demand for compelled disclosure of First Choice's donors. That presents the same kind of threat that the Supreme Court stopped in *Americans for Prosperity*, 594 U.S. at 603. And it is truly irreparable, for once those donor identities are disclosed—to a hostile state official, no less—it will be impossible to unring the bell. *Id.* at 617.

Plus, the Attorney General's demand is backed by a threat. He issued his Subpoena subject to the same threat of state-law sanctions as in *Americans for Prosperity*, which here include suspending First Choice's operations and subjecting it to fines. N.J. STAT. ANN. § 56:8-6. This "combination" of threatened administrative action backed by the threat of devastating sanctions unquestionably "suffices to create an Article III injury." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 166 (2014). And it is only heightened now, where the state court has enforced the Subpoena under state law, and the Attorney General is now demanding that First Choice be compelled to turn over its donor list before it ever gets a hearing on its constitutional claims.

The district court's decision to again dismiss this case fails to follow this Court's finding that the case *is* ripe. According to the district court, this Court's order simply memorialized the parties' agreement as to jurisdiction—something that "cannot establish subject-matter jurisdiction," which "can never be forfeited or waived." Add.248 (quotation omitted). Quite the contrary, the fact that subject-matter jurisdiction cannot be waived means that this Court necessarily found

11

subject-matter jurisdiction when it held the prior appeal moot and remanded the case back to the district court. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Subject-matter jurisdiction was the principal issue in First Choice's prior appeal, and this Court found that appeal moot because jurisdiction was so clearly established.

The district court ruled that a constitutional injury would not materialize until a state court both enforced the Subpoena *and* threatened First Choice with contempt for failing to produce constitutionally protected information. Add. 267 n.24. But that conclusion conflicts with *Elrod*, *Americans for Prosperity*, and *S.B.A. List*. The district court even acknowledged that First Choice has been chilling its speech because of this investigation, Add.094, but inexplicably batted it aside as an "incidental inhibition of speech . . . discretionarily made." Add.266. It is the discretion to speak and to associate that the First Amendment protects, and that harm is occurring now.

The district court's conclusion that the federal claims are not ripe in the midst of proceedings to compel information would mean that First Amendment rights are not implicated in those proceedings. That can't be right. The absence of a threat of contempt from the state-court judge is wholly immaterial when another state official—the Attorney General—specifically threatens sanctions in a state-court forum with jurisdiction over First Choice.

## II.    First Choice will likely prevail on appeal.

First Choice is likely to prevail. Meeting this factor only requires "a reasonable probability of eventual success in the litigation," which means "significantly better than negligible," not "more likely than not." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176, 179 (3d Cir. 2017) (quotation omitted). First Choice will likely succeed on its claims, especially its First Amendment association claims, which the Attorney General's demand for donor information directly threatens. His unsupported justification for that demand—and his open hostility to pregnancy centers—show he cannot meet the high bar the Constitution sets for such claims.

### A.    The Subpoena fails exacting scrutiny.

The First Amendment "right to associate with others" "is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority." *Roberts v. U. S. Jaycees*, 468 U.S. 609, 622 (1984)); *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460, 462 (1958). Threats to the right of association must satisfy at least the standard of exacting scrutiny, if not strict scrutiny. *Compare Americans for Prosperity*, 594 U.S. at 607 (plurality op.), *with id.* at 620 (Thomas, J., concurring in part), *and id.* at 621 (Alito & Gorsuch, J.J., concurring in part). Exacting scrutiny demands "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010) (cleaned up). "To withstand this scrutiny, the

strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Id.* (cleaned up).

Exacting scrutiny demands that any such compelled disclosure be "narrowly tailored to the government's asserted interest." *Americans for Prosperity*, 594 U.S. at 608 (plurality op.). That high bar "is appropriate given the deterrent effect on the exercise of First Amendment rights that arises as an inevitable result of the government's conduct in requiring disclosure." *Id.* at 607 (plurality op.) (quotation omitted). The Attorney General's demand for First Choice's donors does not even come close to meeting it.

As in *Americans for Prosperity*, this case presents "a dramatic mismatch" between the interest the Attorney General purports to promote and his proposal to obtain it through compelled disclosure. *Id.* at 612 (plurality op.). The Attorney General says he needs donor names to identify and protect those whom he believes may have been deceived by First Choice's client website into thinking it was not a pro-life organization. Add.151–153, 167. Putting aside that every page of that website states that First Choice does not provide or refer for abortions, Add.217, his demand is not narrowly tailored. That's because his Subpoena demands First Choice "[i]dentify donations made to First Choice *by any means other than through*" First Choice's dedicated donor website. Add.60 (emphasis added). He wants First Choice to name everyone who gave at one of First Choice's fundraiser dinners, who gave

through a church, dropped off a check, or gave a gift of stock—i.e., the donors most likely to know First Choice's pro-life mission. There is no basis to believe that these donors have been deceived by a website that they did not use to give.

Just as in *Americans for Prosperity*, the purported need to prevent fraud by charities is of no use in defending this broad demand for donor information. Certainly, there is an "important interest in preventing wrongdoing by charitable organizations," but that could not justify policing it through a dragnet that would compel donor disclosure from every nonprofit. 594 U.S. at 612. The purported interest in policing fraud had little support when the state could not identify "a single, concrete instance" where compelled disclosure of donor information "did anything to advance the Attorney General's investigative, regulatory or enforcement efforts." *Id.* at 613.

The Attorney General's case here is weaker still. Not only has the Attorney General not identified anyone who claims to be deceived by First Choice's website, but the donor identities he has demanded are not tied to those who could have been deceived by the website. There is no more connection between his demands and his stated purpose than Alabama's demand for the NAACP's membership list had to the state's asserted interest in enforcing its corporate registration statute. *NAACP*, 357 U.S. at 464.

In the district court, the Attorney General's attempt to defend the narrow tailoring of his Subpoena was to cite *Perry v. Schwarzeneggar*, 591 F.3d 1147 (9th Cir. 2010), which he says "compel[ed] donor disclosure" as "'highly relevant' to claims in the litigation." *First Choice*, No. 23023076, Dkt.44 at 28. But that's the opposite of what *Perry* held: the Ninth Circuit ruled that compelling discovery of supporter identities for a California ballot measure was "clear error" that warranted mandamus. 591 F.3d at 1158.

In *Perry*, the district court had greenlit the request for supporter identities and communications between them, ruling that the First Amendment only protected the identities of "rank-and-file volunteers," but not of "high ranking members" of the campaign. *Id.* at 1154. The Ninth Circuit panel unanimously held that this presented "an extraordinary case" that warranted mandamus. *Id.* at 1157. Because of the injury from "the disclosure itself," which could not be reviewed after a final judgment, the "chilling effect" on making such communications discoverable, and the district court's "clear error" in treating First Amendment associational protections as leniently as the "generous relevance standard" of Rule 26, the Ninth Circuit granted mandamus. *Id.* at 1158.

*Perry* dooms the Attorney General's case and demands equitable relief here too. The Attorney General's demands are neither substantially

related to his professed purpose nor narrowly tailored to achieve it. The Constitution forbids giving him what he asks.

B.    **The Attorney General is hostile to pregnancy centers.**

The threat that compelled disclosure poses to First Choice's First Amendment rights is even clearer in view of the Attorney General's overt hostility to First Choice's pro-life viewpoint. He has issued public diatribes against pregnancy centers and enlisted First Choice's biggest ideological opponent—Planned Parenthood—to help develop his theory against them. That overt hostility and disparate treatment not only supports First Choice's selective enforcement and retaliation claims, *Brown v. City of Pittsburgh*, 586 F.3d 263, 293 (3d Cir. 2009), but also underscores the harm that would befall First Choice in giving its donor identities to the Attorney General.

The Supreme Court's recent decision in *Vullo* makes the import of the Attorney General's actions against pregnancy centers unmistakable. Justice Sotomayor's unanimous opinion reaffirmed that "the First Amendment prohibits government officials from wielding their power selectively to punish or suppress speech." *Vullo*, 144 S.Ct. at *11. Thus, while "[a] government official can share her views freely and criticize particular beliefs," even forcefully, she cannot "use the power of the State to punish or suppress disfavored expression." *Id.* at *7. An official's public statements and official actions bear directly on a showing of improper punishment of disfavored speech. It may occur where an official focuses

"enforcement actions 'solely'" on those making disfavored speech, while ignoring others engaged in similar activities, *id.* at \*8, or with press releases and letters "on official letterhead" that "single[] out" disfavored speakers "as the targets of [the official's] call to action." *Id.* at \*9. And even where, unlike in this case, the official claims he is merely pursuing "conceded violations of the law" or targeting "business practices and relationships" rather than speech, it does not foreclose the existence of a "coercive threat raising First Amendment concerns." *Id.* at \*10.

The evidence that showed government suppression of speech in *Vullo* is even more present here. While the defendant in *Vullo* simply declined to pursue enforcement against similarly situated organizations, the Attorney General has gone much further by actively soliciting Planned Parenthood's help to develop enforcement theories against its pro-life counterparts. Add.036–44. He has also issued numerous official pronouncements against pregnancy centers—both his consumer alert objecting that pregnancy centers "do NOT provide abortion care," Add.107, and his open letter pledging "to take numerous actions" against them. Open Letter, *supra* note 1, at 8. The fact that he says he needs all of First Choice's donor identities to enforce the law is no more defense than it was in *Vullo*. Just as the Alabama attorney general's open hostility to the NAACP tainted his efforts to identify its members, this all makes it highly unlikely the Attorney General can meet exacting scrutiny.

**C.    Undecided federal objections preclude enforcement.**

Though the Attorney General has acknowledged that First Choice's constitutional claims are ripe in federal court, he continues to do all he can to prevent a decision on those claims until *after* First Choice is forced to turn over the information it claims is federally protected. Right now, he is asking the state trial court to compel First Choice to turn over that information and to sanction First Choice for not having done so. But as the Supreme Court explained, if a subpoena respondent claims that "inquiries and demands infringe substantially upon First and Fourteenth Amendment associational rights of individuals, the courts are called upon to, *and must*, determine the permissibility of the challenged actions." *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 545 (1963) (emphasis added) (citing *Watkins v. United States*, 354 U.S. 178, 198-99 (1957)); *see also Fed. Election Comm'n v. Fla. for Kennedy Comm.*, 681 F.2d 1281, 1284 (11th Cir. 1982).

That's true as a matter of due process as well: when the government takes action against a private party, there must be a hearing on the party's defenses before an adjudication of its rights. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The Constitution demands an adjudication of the protected status of this information *before* First Choice can be compelled to produce it.

The Attorney General's expedient theory of "disclose now, decide later" contradicts not only Supreme Court precedent but the positions he

has taken—and prevailed on—throughout this litigation. In successfully opposing First Choice's motions in this Court and in the U.S. Supreme Court, the Attorney General emphasized that First Choice could still "seek relief from the state courts for the same federal constitutional claims." *In re First Choice Women's Resource Centers, Inc.*, No. 23-941, Br. in Opp. at 11 (U.S. Mar. 29, 2024); *see also First Choice,* No. 24-1111, Dkt.14 at 12. Having "obtained relief" based on that assertion, judicial estoppel forbids the Attorney General to "contradict himself" and take the opposite position that he can force First Choice to comply before any court adjudicates those federal rights. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (quotation omitted). The Court may reject it out of hand to prevent him "from playing fast and loose with the courts." *Id.* (quotation omitted)

Nor can the Attorney General argue that the state court's decision precludes First Choice's federal claims. "For a judicial decision to be accorded res judicata effect, it must be a valid and final adjudication on the merits of the claim." *Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.*, 662 A.2d 536, 541 (N.J. 1995) (internal quotation omitted). In state court, the Attorney General admitted that didn't happen: "As Your Honor just ruled, *there are no ripe constitutional issues at stake in this case.*" Add.080 (emphasis added). The district court here recognized the same thing—because the state court's "sole articulated basis" for rejecting those claims was that they "were not ripe," it necessarily did not

preclude them. Add.247. Instead, by concluding that it could not decide First Choice's constitutional objections, the state court's ruling rejected those claims "without prejudice" and "did not operate to adjudicate the merits." *Exxon Rsch.*, 775 A.2d at 619; *see also Transamerica Ins. Co. v. Nat'l Roofing, Inc.*, 527 A.2d 864, 867 (1987) (dismissal for mootness is not "an adjudication on the merits"). "[A] dismissal based on a court's procedural inability to consider a case will not preclude a subsequent action on the same claim." *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 600 (1991). The state court's dismissal of federal claims for lack of ripeness did not adjudicate those claims any more than the district court's dismissal did.

If the Court were to credit the Attorney General's retrograde theory of enforcement before adjudication, it would mean litigants like First Choice would regularly be required to take the same actions the NAACP did to defend the confidentiality of its membership lists—that is, challenging a high-dollar contempt citation for failing to produce it. *NAACP*, 357 U.S. at 454. But the First Amendment does not require litigants to defy unconstitutional state laws before they can be heard to challenge them. As the Supreme Court explained of similar state tactics against the NAACP, "[n]ovelty in procedural requirements cannot be permitted to thwart review . . . applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their

federal constitutional rights." *Id.* at 457–58. That is just as true of the Attorney General's campaign against pregnancy centers here.

## III.  The balance of harms favors an injunction.

In contrast to the patent irreparable harm to First Choice, the Attorney General has identified no irreparable harm he would face in having to wait for documents from an organization that has been lawfully operating in New Jersey for 40 years without incident. He has shown no immediate need for a list of donors and sensitive, internal documents from a faith-based non-profit organization that provides all its services for free. He thus fails to show any non-speculative harm from putting his overly intrusive requests on hold. Plus, "[t]here is a strong public interest in upholding the requirements of the First Amendment." *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 109 (3d Cir. 2022). The balance of harms tips sharply in favor of First Choice, such that even "serious questions going to the merits" suffice to grant an injunction. *In re Revel*, 802 F.3d at 570 (quotation omitted). First Choice's showing of likelihood of success amply warrants relief pending appeal.

## CONCLUSION

The Court should enjoin the Attorney General from enforcing the Subpoena pending appeal.

Dated: November 15, 2024          Respectfully submitted,


                                  */s/ Lincoln Davis Wilson*

LINCOLN DAVIS WILSON
ERIN M. HAWLEY
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
ehawley@ADFlegal.org
lwilson@ADFlegal.org

ERIK C. BAPTIST
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4789
ebaptist@ADFlegal.org

*Counsel for Plaintiff-Appellant First Choice Women's Resource Centers, Inc.*

## CERTIFICATE OF COMPLIANCE

This motion complies with Fed. R. App. P. 27 because it contains 5,199 words, excluding parts exempted by Fed. R. App. P. 27(a)(2)(B) and 32(f).

This motion complies with Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

*/s/ Lincoln Davis Wilson*

*Counsel for Plaintiff-Appellant First Choice Women's Resource Centers, Inc.*

November 15, 2024

# CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ Lincoln Davis Wilson*

*Counsel for Plaintiff-Appellant First Choice Women's Resource Centers, Inc.*

November 15, 2024