# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

No. 24-3124

FIRST CHOICE WOMEN'S RESOURCE CENTERS, INC.,
*Plaintiff-Appellant*,

v.

MATTHEW J. PLATKIN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY
*Defendant-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY (No. 23-cv-23076 (MAS))

## RESPONSE IN OPPOSITION TO
## EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

MATTHEW J. PLATKIN
*Attorney General of New Jersey*

JEREMY M. FEIGENBAUM
*Solicitor General*

DAVID LEIT
*Assistant Attorney General*

MEGHAN K. MUSSO
BRYCE K. HURST
NATHANIEL I. LEVY
ELIZABETH R. WALSH
LAUREN E. VAN DRIESEN
*Deputy Attorneys General*

Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, NJ 08625-0080
(862) 350-5800
Meghan.Musso@law.njoag.gov

*Attorneys for Defendant-Appellee*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

STATEMENT OF RELATED MOTIONS ...........................................10

ARGUMENT ........................................................................................11

  I.  APPELLANT WILL SUFFER NO IRREPARABLE HARM PENDING
THIS EXPEDITED APPEAL. ......................................................11

  II.  APPELLANT'S CHALLENGE IS UNLIKELY TO SUCCEED. ...............14

    A.    Ripeness. .............................................................................15

    B.    Merits. .................................................................................18

CONCLUSION .....................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ams. for Prosperity Found. v. Bonta* (*AFP*),
  594 U.S. 595 (2021) .................................................................21

*Atl. Richfield Co. v. FTC*,
  546 F.2d 646 (5th Cir. 1977) .....................................................16

*Belle Fourche Pipeline Co. v. United States*,
  751 F.2d 332 (10th Cir. 1984) ...................................................15

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) .................................................................13

*DeMartini v. Town of Gulf Stream*,
  942 F.3d 1277 (11th Cir. 2019). ................................................18

*Exxon Mobil Corp. v. Schneiderman*,
  316 F. Supp. 3d 679 (S.D.N.Y. 2018) ........................................19

*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980) .................................................................13

*Gen. Fin. Corp. v. FTC*,
  700 F.2d 366 (7th Cir. 1983) .....................................................15

*Goldstein v. Galvin*,
  719 F.3d 16 (1st Cir. 2013) .......................................................19

*Google v. Hood*,
  822 F.3d 212 (5th Cir. 2016) ...........................................5, 15, 16

*Hartman v. Moore*,
  547 U.S. 250 (2006) .................................................................18

*Ill. ex rel. Madigan v. Telemarketing Assocs., Inc.*,
  538 U.S. 600 (2003) .................................................................21

*In re Addonizio*,
  248 A.2d 531 (N.J. 1968) ............................................................3

*In re Diet Drugs*,
  282 F.3d 220 (3d Cir. 2002) ................................................13, 14

*In re First Choice Women's Res. Centers, Inc.*,
  144 S.Ct. 2552 (Mem.) (2024) ....................................................5

*In re Ramirez*,
    905 F.2d 97 (5th Cir. 1990) ...............................................................15

*Jewish Home of E. PA v. Ctrs. for Medicare & Medicaid Servs.*,
    693 F.3d 359 (3d Cir. 2012)....................................................... 18, 19

*National Rifle Association of America v. Vullo*,
    602 U.S. 175 (2024)...........................................................................20

*Platkin v. Smith & Wesson Sales Co.*,
    289 A.3d 481 (N.J. Super. Ct. App. Div. 2023) ..........................7, 19

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017).............................................................11

*Reisman v. Caplin*,
    375 U.S. 440 (1964)..........................................................................15

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988)..........................................................................21

*Schulz v. IRS*,
    413 F.3d 297 (2d Cir. 2005)..............................................................15

*SEC v. Wheeling-Pittsburgh Steel Corp.*,
    648 F.2d 118 (3d Cir. 1981).............................................................19

*Shea v. Off. of Thrift Supervision*,
    934 F.2d 41 (3d Cir. 1991)...............................................................15

*Tafflin v. Levitt*,
    493 U.S. 455 (1990).........................................................................13

*Wearly v. FTC*,
    616 F.2d 662 (3d Cir. 1980).............................................................15

*Winter v. NRDC*,
    555 U.S. 7 (2008).............................................................................11

**Statutes**

Miss. Code Ann. § 75-24-17......................................................................16

N.J. Stat. Ann. § 45:1-18..............................................................................2

N.J. Stat. Ann. § 45:1-18.2...........................................................................3

N.J. Stat. Ann. § 45:1-21..............................................................................3

N.J. Stat. Ann. § 45:17A-32..........................................................................3

N.J. Stat. Ann. § 45:17A-33 .................................................................................2, 16

N.J. Stat. Ann. § 56:8-2 ..........................................................................................3

N.J. Stat. Ann. § 56:8-3 ..........................................................................................2

N.J. Stat. Ann. §45:1-19 ........................................................................................16

N.J. Stat. Ann. §56:8-6 ..........................................................................................16

**Regulations**

N.J. Admin. Code § 13:35-6.10 ...............................................................................3

**Other Authorities**

U.S. Food & Drug Admin., FDA Label (Mar. 2016),
    https://tinyurl.com/2vndx5k3 .........................................................................4

## INTRODUCTION

After the State conducted a preliminary investigation revealing concerns that Appellant may have engaged in conduct that misleads the public and/or violates state laws relating to licensed professionals, the State issued a subpoena on November 15, 2023 ("Subpoena"). Over the past year, the parties have engaged in litigation across five fora—the state trial court, state appellate court, federal district court, this Court, and the Supreme Court. Each court to consider Appellant's motions for emergency relief has denied them, including two decisions from this Court denying injunctions pending appeal. Appellant's third motion should likewise be denied.

There are at least three reasons why this Court should deny this motion: lack of irreparable harm, ripeness, and the merits. Initially, because this Court expedited this pending appeal, such that argument will occur on December 10, an injunction pending appeal is only proper if it addresses harm that will occur before this Court can rule. Appellant alleges that a state trial court could require Appellant to produce documents for which it has First Amendment defenses or impose sanctions for past noncompliance. But the state court has clarified that it has *not* decided whether to compel production and will consider Appellant's constitutional claims before doing so, and expressly added it will not impose sanctions. Whatever concerns Appellant had when it filed this motion were thus addressed by this Court's intervening order to expedite and the state trial judge's subsequent clarifications.

While the lack of irreparable harm justifies denying or deferring this motion, Appellant fares no better on the likelihood of success. Initially, its claims are not ripe. As the district court explained, a challenge to an administrative subpoena is not ripe when the state court with statutory authority to enforce it has not yet decided whether to do so—and the subpoena recipient faces no sanctions until such order issues. Again, just this week, the state trial court clarified that it did *not* yet enforce the Subpoena and confirmed it would review Appellant's constitutional challenges before doing so, leaving no ripe Article III case before this Court. Although the lack of irreparable harm and ripeness foreclose this motion, if this Court still assesses the merits, Appellant's selective-enforcement and associational claims are not likely to succeed: the State had cause to initiate this investigation into potential misconduct relating to consumer dealings, charitable solicitations, and licensed professionals, and its requests are tailored to the State's important interests.

## BACKGROUND

A.    The Investigation And Subpoena.

The New Jersey Consumer Fraud Act ("CFA"), the Charitable Registration and Investigations Act ("CRIA"), and the Professions and Occupations law ("P&O law") each empower the Attorney General to investigate whether an entity or individual is engaged in an unlawful practice. *See* N.J. Stat. Ann. § 56:8-3 (CFA); § 45:17A-33(c) (CRIA); § 45:1-18 (P&O law). The statutes and regulations define

various unlawful practices. *See*, *e.g.*, N.J. Stat. Ann. § 56:8-2 (CFA) (deceptive and fraudulent commercial practices); N.J. Stat. Ann. § 45:17A-32(a), -(c)(3), -(c)(7) (CRIA) (covering charities); N.J. Stat. Ann. § 45:1-18.2, -21 (P&O law) (unlicensed practice of medicine, deceptive and misleading practices and other professional misconduct); N.J. Admin. Code § 13:35-6.10(c), -(d), -(g)(4). This case arose from efforts by the Attorney General and Division of Consumer Affairs (the "State")— which are "charged with seeing that [its] statute[s are] obeyed" and vested with power to "inquire to be assured of compliance," *In re Addonizio*, 248 A.2d 531, 542 (N.J. 1968)—to investigate whether Appellant's prior conduct violated the CFA, CRIA, and P&O laws through misleading or false statements.

Early investigatory steps revealed Appellant may be violating these laws. Initially, the State grew concerned that Appellant may be misleading some of its potential donors. *See* DNJ.Dkt.44-1,[1] Certification of Angela Cai ("Cai.Cert."), Ex. 1 ("Turner.Cert."), ¶¶4-10. Its core site for donors, https://1stchoicefriends.org, says that Appellant has a pro-life mission to "protect the unborn," Turner.Cert. Ex. 2 at AG181-82, including on its donation-solicitation and volunteer-application pages. *See id.* at AG175-82. But Appellant maintains other websites, https://1stchoice.org

---

[1] This brief cites the DNJ docket as "DNJ.Dkt."; the prior appeal in this matter, CA3 No. 24-1111, as "CA3.Dkt."; this appeal, CA3 No. 24-3124, as "Dkt."; Appellant's brief in support of this motion, Dkt.10, as "FCBr."; and the addendum to this brief— the transcript of a November 19 argument before the state court—as "Add.Tr."

and https://firstchoicewomancenter.com, that fail to accurately describe its full mission and operations, even though each website has donation pages. Turner.Cert. Ex. 1 at AG023-26. In other words, donors who used those other websites were told only that Appellant invites those "considering an abortion" to "[l]earn more about the abortion pill, abortion procedures, and your options in New Jersey," and not about Appellant's pro-life work. Turner.Cert. Ex. 1 at AG001.

Moreover, the State became concerned about whether certain individuals are performing diagnostic sonograms and purporting to assess gestational age, viability, and ectopic pregnancies without the requisite qualifications and licensure. *Compare, e.g.*, Turner.Cert. ¶¶5-7 (representation that Appellant's services are overseen by a physician), *and id.* Ex. 3 at AG226 (purporting to diagnose ectopic pregnancies and determine fetal viability), *with id.* Ex. 1 at AG059, AG056 (website stating that it is "not … an obstetrical medical practice" and "do[es] not use ultrasound to … diagnose abnormalities"). And the State became concerned that Appellant is making medical statements that may be misleading or untrue. *Compare* Turner.Cert. Ex. 3 at AG249 (claiming "pre-abortion ultrasound is generally required before you take the abortion pill"), *with* U.S. Food & Drug Admin., FDA Label at 17 (Mar. 2016), https://tinyurl.com/2vndx5k3 (citing ultrasound as option, not general requirement); Turner.Cert. Ex. 1 at AG076-80 (Appellant stating "[b]ecause of the risk of serious

complications, the abortion pill is only available through a restricted program," and the pill can lead to "sepsis" and "rupturing of the uterus").

To determine whether Appellant violated state law, the State issued the instant Subpoena on November 15, 2023, with a 30-day period to respond. *See* Turner.Cert. Ex. 4 at AG280-303. Appellant responded with this suit. DNJ.Dkt.13, 12.

B.    Procedural History.

1.    *Dismissal of This Action and the Prior Appeal To This Court.*

On January 12, 2024, the federal district court dismissed this lawsuit, finding Appellant's claims unripe. DNJ.Dkt.28 (opinion), 29 (order). The court explained that although the Subpoena was issued by the Division, it was not self-executing—meaning it had to be enforced by a state court to obtain compliance. DNJ.Dkt.28 at 7. Because no state court had yet done so, and there was "no current consequence for resisting the subpoena," the district court found the case could not proceed under Article III. *Id.* (citing *Google v. Hood*, 822 F.3d 212, 226 (5th Cir. 2016)).

Appellant appealed, and this Court denied its motion for an injunction pending appeal. CA3.Dkt.20. The U.S. Supreme Court then denied Appellant's petition for writ of mandamus. *In re First Choice Women's Res. Centers, Inc*., 144 S.Ct. 2552 (Mem.) (2024). In the interim, this Court denied Appellant's request to expedite the appeal, noting Appellant did not "promptly file" the request or inform the Court that it "simultaneously pursu[ed] extraordinary relief from the Supreme Court and

represent[ed] to that Court that expedited treatment is not necessary." CA3.Dkt.29 (reminding Appellant of the duty of candor counsel have to this Court).

2.     <em>The State Court Denies Appellant's Motion To Quash.</em>

Meanwhile, the State moved to enforce the Subpoena in state Superior Court on January 30, 2024. Cai.Cert. Ex. 5, Ex. D; Cai.Cert Ex. 8. Appellant cross-moved to stay or quash on April 1, 2024, Cai.Cert Ex. 5, Ex. E, and the parties briefed the same constitutional arguments Appellant raises here, *see id.*; Cai.Cert. Exs. 6, 8, 9. On May 28, the state court granted the State's application, denied the cross-motion to quash, and denied Appellant's motion for a stay. *See* DNJ.Dkt.41-4 ("Oral Ruling") at 16:17-17:2; 31:17-33:24. The court memorialized its rulings in orders dated May 30 (denying stay pending appeal), June 6 (cross-motion to stay or quash), and June 18 (granting motion to enforce) ("June 18 Order"). Cai.Cert. Ex. 2.

The court's ruling found no "basis to deny the [State's] order to show cause and quash the subpoena." Oral Ruling at 6:21-23; 16:12-17:2. The court rejected Appellant's view that the Subpoena resulted from some "retaliation and bias on the State's part," finding Appellant's claim to be "speculation." *Id.* at 10:5-11:9. While Appellant argued that the Attorney General's positions on reproductive healthcare supported its First Amendment animus claim, the court held that "public officials, including the Attorney General, frequently make statements of public concern" but

may still investigate. *Id.* at 10:5-11:17 (quoting *Platkin v. Smith & Wesson Sales Co.*, 289 A.3d 481, 487 (N.J. Super. Ct. App. Div. 2023)).

But the state court did not address all the constitutional claims, and rather held a number of them to be premature. The court recognized that Appellant had certain arguments that did not challenge the entire Subpoena on its face, but "which center on" the Subpoena's "scope"—including its claims that certain of the requests would violate its First Amendment associational rights and that others were burdensome or unreasonable under the Fourth Amendment. *See id.* at 11:18-12:10. Instead, the trial court emphasized, Appellant had never met with the State to discuss such issues. *Id.* So while the court stated that "the Attorney General has not, at this very preliminary juncture of this matter, violated any statutory or constitutional tenets which would lead to a quashing of the subpoena at issue," *id.* at 16:12-18, the court held Appellant's "constitutional arguments [we]re … premature" at that time, *id.* at 12:11-13; 13:17-15:20. The court's June 18 Order thus directed Appellant to "respond fully" to the Subpoena by July 18. Cai.Cert. Ex. 2.

3.    *Subsequent State Court Motions And Appellate Filings.*

In the two months between the May 28 ruling and July 18 deadline, Appellant did not seek a stay pending appeal or any other relief from the Appellate Division. Cai.Cert. Ex. 3. Instead, on July 18, Appellant filed a motion for a protective order ("PO Motion") with the state trial court. *Id.* at Ex. 10. Appellant also identified a list

of requests to which it objected. On July 19, Appellant filed a notice of appeal with the Appellate Division, but again did not move for a stay. Cai.Cert. Ex. 3.

On July 26, the State opposed Appellant's PO Motion and cross-moved to enforce litigants' rights ("Motion to Enforce June 18 Order") based on Appellant's failure to comply with the court order. *Id.* at Ex. 4. The state trial court held a hearing on these motions and found that it lacked jurisdiction to hear Appellant's PO Motion because the pending appeal to the Appellate Division divested it of the authority to review the Motion. DNJ.Dkt.54-1 at 11:4-20. Despite undisputed jurisdiction to hear the State's pending enforcement motion regardless of the pending appeal, the state court held that motion in abeyance because it did not wish to consider enforcement unless it could simultaneously consider Appellant's legal objections. *Id.* at 17:25-18:6; 19:4-20:7. The Appellate Division therefore granted a remand to allow the trial court to consider these motions by December 2, 2024. DNJ.Dkt.65.

4.    *Subsequent Federal Filings And Decisions.*

After the May 28 state-court ruling, Appellant waited 18 days to file a motion for an injunction pending appeal in its prior appeal before this Court. CA3.Dkt.49, 49-1. The State responded with a motion to dismiss that appeal as moot in light of the subsequent state court decisions. CA3.Dkt.50. On July 9, this Court dismissed

the prior appeal as moot and remanded to the district court. CA3.Dkt.56-1. Ten days later, Appellant filed a TRO/PI motion with the district court. DNJ.Dkt.41.

On November 12, the district court denied Appellant's TRO/PI motion and dismissed without prejudice. *See* DNJ.Dkt.66 at 41-42 ("DNJ.Op."). It detailed the procedural history of this case, and found the state court's prior orders actually had not yet compelled compliance with the Subpoena. Instead, the district court held it "remain[ed] an open question" whether Appellants would be compelled to disclose the materials it believed were constitutionally protected, and so the matter remained unripe in an Article III court. DNJ.Op. at 21. Appellant filed an appeal, Dkt.1, and a motion for injunction pending appeal, DNJ.Dkt.69, which the district court denied. DNJ.Dkt.70. Appellant then filed this motion for an injunction pending appeal on November 15. This Court subsequently granted Appellant's motion to expedite this appeal, setting oral argument for December 10.

5. *The State Court's November 19 Oral Argument.*

On November 19, 2024, the state court heard argument on the State's Motion to Enforce and Appellant's PO Motion. At that hearing, attached as an Addendum to this motion, the court provided additional clarity regarding the scope and impact of her prior orders. Initially, the court clarified that it had not yet compelled Appellant to produce documents; rather, consistent with Appellant's own argument to the state court, the judge explained that her June 18 Order requiring Appellant to

"respond fully" to the Subpoena meant it could simply respond with objections, not documents. *See* Add.Tr.38:19-24 (Appellant arguing that it "did comply with the order, as the Court observed. The Court directed us to respond fully to the subpoena. And response can well be that we object."); Add.Tr.73:22-24 (same); Add.Tr.33:5-20 (court agreeing that "a response can well be that we object" on constitutional or privilege grounds without producing documents); Add.Tr.108:1-109:15 (adding its "thought process" and "intention" in ordering Appellant to "respond fully" was to solicit responses and objections and then adjudicate them). The court acknowledged that Appellant had responded fully by raising associational and other challenges to some of the subpoena requests, and the trial court was explicit that it had not decided whether to enforce the Subpoena and that it would still review the briefing on these constitutional claims before doing so. *See* Add.Tr.33:5-22, Add.Tr.57:1-13. And the trial court stated that it would not be issuing sanctions for Appellant's nonproduction to date. *See* Add.Tr.101:3-4 ("I'm not granting sanctions on this motion."). The court ultimately took the matter under advisement at the conclusion of argument.

## STATEMENT OF RELATED MOTIONS

This motion is related to the following three motions previously resolved by this Court in the prior appeal in this matter, 3d Cir. Dkt. No. 24-1111:

1.  February 15, 2024 Order denying Appellant's emergency motion for an injunction pending appeal.

2.     March 11, 2024 Order denying Appellant's motion to expedite.

3.     July 9, 2024 Order denying Appellant's motion for injunction pending
appeal, dismissing appeal as moot, and remanding to district court.

This motion is also related to the following motion previously resolved in this
appeal, 3d Cir. Dkt. No. 24-3124:

1.     November 18, 2024 Order granting Appellant's motion to expedite and
setting argument for week of December 9, 2024.

## ARGUMENT

The Court should deny an emergency injunction. First, Appellant will suffer
no irreparable harm in the short time until this Court can resolve the pending appeal.
Second, Appellant's claims are not likely to succeed, both because they are not ripe
and because they will not likely prevail on the merits.

## I.     APPELLANT WILL SUFFER NO IRREPARABLE HARM PENDING THIS EXPEDITED APPEAL.

Appellant cannot establish that it will suffer irreparable harm during the short
time in which this expedited appeal is pending. *See Reilly v. City of Harrisburg*, 858
F.3d 173, 179 (3d Cir. 2017) (irreparable harm is "gateway factor[]" for emergency
injunctive relief); *Winter v. NRDC*, 555 U.S. 7, 31 n.5 (2008) ("A stay is a useful
tool for managing the impact of injunctive relief pending further appeal, but once
the Court resolves the merits of the appeal, the stay ceases to be relevant.). Consistent

with this Court's recent order, briefing in this case will conclude on December 5 and oral argument will take place on December 10. While Appellant's motion expressed concern that it could be required to produce documents and/or face sanctions during those few weeks, subsequent events have addressed its fears.

But during the intervening November 19 state-court hearing, the state court's statements addressed Appellant's concerns. There, the court made clear that its prior June 18 Order requiring Appellant to "respond fully" to the Subpoena did not require Appellant to produce all requested documents; instead, the court confirmed that its Order required Appellant respond by producing documents *or* citing its objections, including its constitutional ones. *See supra* at 9-10; Add.Tr.33:5-20; 38:19-24; 73:22-24; 108:1-109:15. The court added Appellant had thus responded fully by raising associational and other challenges to some subpoena requests, and the trial court was explicit that it had not decided whether to enforce the Subpoena and would review the briefing on these issues first. *See supra* at 9-10. And even if the court enforces those provisions, the court previously set 30 days for responses, meaning any further production would be due well after argument in this Court.[2] *See* Cai.Cert. Ex. 2. Furthermore, the court stated it would not sanction Appellant for

_____

[2] If the state court did order compliance on a shorter timeline, Appellant could renew its motion before this Court. But that concern is both speculative and, given the state court's practice in this very case, exceedingly unlikely.

nonproduction to date. *See supra* at 10. There is no risk that Appellant will have to produce documents or face sanctions before this Court can consider this appeal.

The only actions that could occur before the December 10 argument would be additional proceedings before, and orders from, the state court. But having to litigate the same constitutional issues before a state forum is quintessentially not irreparable harm. *See In re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002) (noting that concurrent state and federal litigation, in which "[e]ach court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court," is both common and permitted); *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("Mere litigation expense … does not constitute irreparable injury."); *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 746 (2023) (same). Nor will the fact that the state court might issue an order addressing some of these same claims impose irreparable harm either. *See Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) (finding that "state courts have inherent authority" and equal "competen[ce]" to handle federal claims). There is no basis for an injunction to hinder the state court's proceedings.

Rather, a federal injunction that would exist *only* to halt ongoing state-court proceedings—not to avoid sanctions or further productions—would be a tremendous affront to federalism and comity. Congress enacted the Anti-Injunction Act to "prohibit[], with certain specified exceptions, injunctions by federal courts that have the effect of staying a state court proceeding." *Diet Drugs*, 282 F.3d at 233; *see also*

13

*id.* at 234-35 (discussing animating "principles of federalism and comity"). That describes this case perfectly. Although styled as an injunction to stop the Division from seeking further compliance with the Subpoena, as detailed above, there is no risk of further compliance pending this expedited appeal. The only upshot of a short-lived injunction would be that the Attorney General would have to seek a pause of the state court proceeding—proceedings that have been ongoing for nearly a year and are the subject of state-court hearings and orders. *See, e.g.*, Add.Tr.20:17-21:10 (Appellant explaining injunction pending appeal would require State to "do the right thing" and seek pause in state-court action). That is the opposite of how our federalist system handles concurrent state and federal litigation. *See Diet Drugs*, 282 F.3d at 234 (foreclosing notion that injunctions are appropriate to prevent state court rulings, even if a party fears that such a ruling *may* have some preclusive effect). Simply, an injunction that exclusively exists to hinder a pending state-court adjudication, in a case ongoing for almost one year, undermines comity and the public interest.

## II.     APPELLANT'S CHALLENGE IS UNLIKELY TO SUCCEED.

Appellant's claims are not likely to succeed, because they are unripe and will not likely prevail on the merits.

A.    Ripeness.

Appellant's claims are not yet ripe. Case law instructs that a federal challenge to a non-self-executing administrative subpoena is unripe unless and until the state court enforces it. This state trial court has not yet done so.

A challenge to a non-self-executing administrative subpoena is unripe unless and until a court with authority to enforce it actually orders production. *See Reisman v. Caplin*, 375 U.S. 440, 448-50 (1964); *Schulz v. IRS*, 413 F.3d 297, 303 (2d Cir. 2005); *In re Ramirez*, 905 F.2d 97, 98-100 (5th Cir. 1990); *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334-35 (10th Cir. 1984); *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 371 (7th Cir. 1983). This Court's decisions are in accord. *See Shea v. Off. of Thrift Supervision*, 934 F.2d 41, 45-46 (3d Cir. 1991) (agreeing "subpoenaed party faces actual harm only after a successful enforcement action has been brought and ... has been ordered to comply. It is at that time, and not before, that the party may have an order reviewed by this court."); *Wearly v. FTC*, 616 F.2d 662, 667-68 (3d Cir. 1980) (finding challenge to agency subpoena unripe because plaintiff "was free to await enforcement proceedings").

*Google v. Hood* is instructive. In *Google*, a state Attorney General issued the company a subpoena pursuant to analogous state laws. 822 F.3d at 225-26. Although Google challenged that subpoena in federal court, the Fifth Circuit held the challenge not yet ripe. As the Fifth Circuit explained, the subpoena was a non-self-executing

15

administrative subpoena—meaning the state Attorney General could only enforce his own subpoenas by "'apply[ing]' to certain state courts" for "'an order' granting injunctive or other relief." *Id.* at 225. Because no state court in *Google* had yet decided whether to enforce the Subpoena—a duty the courts alone could perform— the Fifth Circuit found it was still speculative whether a state court would one day do so. *Id.* at 226. And because Google could not be "forced to comply" or face sanctions "absent a court order," it "would 'suffer no undue hardship from denial of judicial relief.'" *Id.* at 225 (quoting *Atl. Richfield Co. v. FTC*, 546 F.2d 646, 650 (5th Cir. 1977)). New Jersey law is the same: it requires the Attorney General to apply to a state trial court for an order enforcing the subpoena, and that court has discretion on whether to grant relief. *Compare* Miss. Code Ann. §75-24-17, *with* N.J. Stat. Ann. §56:8-6 (CFA); §45:17A- 33(g) (CRIA); §45:1-19 (P&O law). Indeed, the state court has taken any risk of sanctions off the table at this time. *See* Add.Tr.101:3-4.

And as the state court clarified to the parties this week, it has not yet enforced the Subpoena. While the state court previously issued an order requiring Appellant to "respond fully" to the Subpoena, the court explained that this order did not compel Appellant to produce documents. Instead, consistent with Appellant's own interpretation of the June 18 Order, the judge explained that her order to "respond fully" meant only that Appellant could still "object" to requests based on "constitutional claims" or "privileges." *See supra* at 9-10; Add.Tr.33:5-20; 38:19-

24; 73:22-24; 108:1-109:15. Moreover, while the state court now has Appellant's objections, the state court still indicated its intent to further review the parties' briefing before deciding to compel. *See supra* at 9-10. Because the state court has not yet compelled compliance, and has confirmed Appellant is not facing sanctions for failing to produce documents in response to this non-self-executing administrative subpoena, the suit is not ripe.

To be clear, this was not the State's position before the federal district court. After the state court ordered Appellant to "respond fully" to the Subpoena, the State interpreted the order to require full production in response to its requests. Because the State believed that the state trial court had now compelled compliance with the Subpoena, it forthrightly told this Court and the federal district court that the case was ripe—as Appellant emphasizes. But the state court has now adopted Appellant's contrary view of the June 18 Order, in which the order merely required Appellant to respond with *objections* rather than documents, meaning the state court had not yet decided to compel compliance with any disputed requests. *See* Add.Tr.108:1-109:15 (court "not faulting the State" for its interpretation, acknowledging requirement to "respond fully" was "not as clear as I should've made it" and emphasizing that court would not "hold" this misunderstanding "against the State"). Given that clarification, the State now acknowledges Judge Shipp rightly found this dispute still unripe. This Court should thus deny this emergency injunction.

B.    <u>Merits.</u>

Although the lack of irreparable harm and threshold ripeness problem dispose of this emergency application, the merits (if this Court reaches them) do too.

1. Appellant has not properly supported its selective enforcement, viewpoint discrimination, and retaliation theories, all of which are based upon a theory that the Subpoena reflects "hostility" to Appellant's views rather than a lawful investigation into Appellant's misleading conduct. FCBr.17-18. Initially, Appellant must establish not only that the Subpoena was for an improper purpose, but also that the Division lacked sufficient justification to issue it. *Hartman v. Moore*, 547 U.S. 250, 256-58, 263-65 (2006) (noting "presumption that [the government] has legitimate grounds"); *Jewish Home of E. PA v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (citing "unequal treatment" insufficient for selective-enforcement challenge based on a government's civil enforcement); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1304–09 (11th Cir. 2019). But Appellant does not—and cannot—show that the Division lacked a sufficient basis for this Subpoena. Indeed, the Division identified concrete bases for its investigation—including the presence of sharply different statements across different websites regarding its operations, potentially misleading or untrue medical statements, and representations regarding licensed professionals' role. *See supra* at 2-4.

Even assuming Appellant could clear that dispositive bar, it fails to establish this Subpoena was driven by ill motive. Appellant does not cite any evidence to establish that the Attorney General or Division acted with animus towards Appellant or that vitiate "a good faith belief" for their investigation. *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 686, 704, 710 n.29 (S.D.N.Y. 2018). Appellant cites the Attorney General's public views on reproductive healthcare, his work with healthcare providers, and his public concerns regarding misleading claims entities like Appellant may be making. But as the state court found, "public officials, including the Attorney General, frequently make statements of public concern," yet no court accepts this as a basis to invalidate otherwise justified fraud investigations. DNJ.Dkt.41-4, Wilson Cert., Ex. 2 (May 28 Ruling) at 10:5-11:9 (quoting *Smith & Wesson Sales Co.*, 289 A.3d at 487); *Exxon Mobil*, 316 F. Supp. 3d at 707 (noting "that [an official] believes climate change is real … does not mean the [official] does not also have reason to believe that Exxon may have committed fraud"); *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013); *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 130 (3d Cir. 1981). Nor does Appellant cite a "similarly situated" entity being treated differently, *Jewish Home*, 693 F.3d at 363: it refers to one reproductive care provider, FCBr.17-18, but cites no evidence that the provider has webpages using different statements about its mission and operations aimed at different audiences.

*National Rifle Association of America v. Vullo*, 602 U.S. 175 (2024), is not incompatible. *Vullo* involved allegations that a public official had coerced regulated entities to cease doing business with the NRA in order to suppress the organization's advocacy. *Id.* at 180-81. *Vullo* did "not break new ground" but only "reaffirm[ed] the general principle" that "a government official cannot do indirectly what she is barred from doing directly." *Id.* at 190, 197. That has no bearing here, because the Subpoena is not a direct nor indirect means of advancing unlawful goals. Rather than "convey[ing] a threat of adverse government action" to punish Appellant's speech, *id.* at 191, the Subpoena is a standard way to investigate potential violations of consumer-protection, charities, and professional occupations laws.

2. The associational claims also fall short. As an initial matter, Appellant seeks an injunction pending appeal to prevent any further compliance with this Subpoena, but the associational challenge in his motion applies only to the Division's particular request for specific donor information.[3] Even as to donors, the claim is flawed.

The Division's request for donor information survives because it is tailored to the State's powerful anti-fraud interest. It is undisputed that States have compelling

---

[3] Before the state trial court, Appellant also seeks to withhold information about its clients and healthcare providers on associational grounds, *see* Add.Tr.49:11-23, 92:22-93:14., but offers no argument for those provisions in this injunction-pending-appeal motion. FCBr.13-16. In any event, Appellant never explains how the Division can assess the licensure and qualifications of Appellant's healthcare providers, and whether those providers followed the P&O law, without knowing their identities.

interests in investigating and combatting fraud by charitable organizations on their donors. *See Ill. ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 623-24 (2003); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988); *see Ams. for Prosperity Found. v. Bonta* (*AFP*), 594 U.S. 595, 612 (2021) (noting "important" anti-fraud interest); FCBr.13-16. Although courts have held that certain prophylactic laws requiring organizations to disclose their donors on a blanket basis may be insufficiently tailored, those decisions held that a more targeted measure to investigate donor fraud is permissible, even citing a reasonably supported "subpoena or audit letter" as the canonical example. *AFP*, 594 U.S. at 613-14.

The donor information the Subpoena seeks reflects a tailored response to the Division's well-supported concerns of potential fraud. As noted above, the Division is concerned Appellant may have misled donors through inconsistent representations across multiple websites—with sharply different information about its mission and operations. *Supra* at 3-4. The Subpoena thus excludes those donors that contributed through the website that clearly identified Appellant's mission—to "protect the unborn," Turner.Cert. Ex. 2 at AG181-82—and operations, and seeks the identities of donors that specifically contributed through the two public websites that invited individuals to "[l]earn more about the abortion pill, abortion procedures, and your options in New Jersey," Turner.Cert. Ex. 1 at AG001. *See* Add.Tr.47:4-48:23 (emphasizing all the Division is asking the state court to compel at this time is

production of donors who contributed via those latter websites).[4] Indeed, the Division "can[not] obtain … the information [it] seek[s] from other sources," *Perry v. Schwarzenegger*, 591 F.3d 1147, 1164 (9th Cir. 2010), because it cannot otherwise identify and contact any donors via these two websites to evaluate the information they had about Appellant and whether they were misled. The Division has made the same arguments to the state court, and that court will consider them before it compels compliance. *See supra* at 11-14, 15-17 (discussing irreparable harm and ripeness). But if this Court considers the associational claims, the Subpoena is lawful.

## CONCLUSION

This Court should deny Appellant's motion for injunction pending appeal.


Respectfully submitted,


MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:     */s/Meghan K. Musso*
           Meghan K. Musso

Dated:  November 22, 2024

---

[4] There is thus no need for an injunction to protect those donors who gave at "benefit dinners" or "church … campaigns." FCBr.4.

# COMBINED CERTIFICATIONS

I hereby certify that the following statements are true:

1.  I am a member of the bar of this Court.

2.  This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a) because it has been prepared in 14-point Times New Roman, prepared in a proportionally spaced font, and contains 5,176 words, according to the count of Microsoft Word.

3.  On November 22, 2024, this brief was filed electronically with the Clerk of the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. Counsel for all parties are registered CM/ECF users and will be served via CM/ECF.

4.  This file was scanned using Crowdstrike Falcon and no virus was detected.

By:    */s/Meghan K. Musso*
       Meghan K. Musso


Dated:  November 22, 2024