Appeal No. 24-3124

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

_____

FIRST CHOICE WOMEN'S RESOURCE CENTERS, INC.,

*Plaintiff-Appellant,*

v.

MATTHEW PLATKIN, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL
FOR THE STATE OF NEW JERSEY

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of New Jersey
Case No. 3:23-cv-23076
Hon. Michael A. Shipp

_____

## BRIEF OF THE MANHATTAN INSTITUTE, INSTITUTE FOR FREE SPEECH, AND RELIGIOUS FREEDOM INSTITUTE
### AS *AMICI CURIAE* SUPPORTING PLAINTIFF-APPELLANT

_____

Ilya Shapiro
THE MANHATTAN INSTITUTE
52 Vanderbilt Ave.
New York, NY 10017
(212) 599-7000
ishapiro@manhattan.institute

Preston N. Carter
Marcus H. Waterman
GIVENS PURSLEY LLP
601 Bannock Street
Boise, ID 83702
(208) 388-1200
prestoncarter@givenspursley.com
mhw@givenspursley.com
*Attorneys for amici curiae*

# DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, *amici* make the following disclosures:

The Manhattan Institute, Institute for Free Speech, and Religious Freedom Institute state they have no parent companies or subsidiaries and issue no stock.

Date: November 22, 2024

GIVENS PURSLEY LLP

*/s/ Preston N. Carter*
Preston N. Carter
*Attorneys for Amici Curiae*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTERESTS OF *AMICI CURIAE* ..........................................................1

ARGUMENT .........................................................................................3

    I.     First Choice's Claims Are Ripe Because It Faces Compelled Disclosure of Its Donors under Threat of Monetary Sanctions. ...........3

          A.     First Amendment claims ripen upon a credible threat of compelled disclosure..................................................................4

          B.     Actual enforcement, as here, unquestionably ripens a claim. ....7

    II.    First Choice Meets the Criteria For an Injunction Pending Appeal....10

CONCLUSION ....................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Ams. for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021)............................................................ 5, 6, 7, 8, 11, 12

*Elrod v. Burns*, 427 U.S. 347 (1976) ...................................................13

*First Choice Women's Res. Ctrs., Inc. v. Platkin*,
  Case No. 23-23076 D.N.J.......................................................3, 11

*NAACP v. Ala. ex rel. Patterson*,
  357 U.S. 449 (1958)..........................................................5

*NAACP v. Button*,
  371 U.S. 415 (1963)..........................................................4

*National Institute for Family & Life Advocates., et al. v. James*,
  Case No. 24-CV-514 (W. Dist. N.Y. Aug. 22, 2024) ...................................10

*National Institute of Family & Life Advocates v. Becerra*,
  585 U.S. 755 (2018).........................................................10

*Peachlum v. City of York*,
  333 F.3d 429 (3d Cir. 2003) ................................................ 5, 6, 9

*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2010) ...............................................13

*Presbytery of N.J. v. Florio*,
  40 F.3d 1454 (3d Cir. 2007) .................................................6, 7

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
  592 U.S. 14 (2020)..........................................................11

*Shelton v. Tucker*,
  364 U.S. 479 (1960)........................................................ 5, 8, 10

*Susan B. Anthony v. Driehaus*,
  573 U.S. 149 (2014).........................................................5

*Thomas v. Anchorage Equal Rts. Com'n*,
  220 F.3d 1134 (9th Cir. 2000) ...............................................7

*Virginia v. Am. Booksellers Ass'n, Inc.*,
  484 U.S. 383 (1988).........................................................9

*Winters v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)............................................................................11

## INTERESTS OF *AMICI CURIAE*

*Amici* are organizations whose ability to effectively pursue their chosen policy goals requires the ability to freely associate with others without fear of reprisal.[1] They seek to provide their perspective on the harm suffered on receipt of a government demand for donor, member, and volunteer information and the importance of a federal forum for reviewing constitutional claims arising out of that demand.

**The Manhattan Institute** is a nonprofit public policy research foundation whose mission is to develop and disseminate new ideas that foster greater economic choice and individual responsibility. It has historically sponsored scholarship and filed briefs opposing regulations that either chill or compel speech.

The **Institute for Free Speech** is a nonpartisan, nonprofit organization dedicated to the protection of the First Amendment rights of speech, assembly, press, and petition. In addition to scholarly and educational work, the Institute represents individuals and civil society organizations in litigation securing their First Amendment liberties. Protecting individuals' ability to privately associate for political purposes is a core aspect of the Institute's mission.

---

[1] No party or party's counsel wrote any part of this brief. No person other than *amici* and their counsel made any financial contribution to fund its preparation or submission.

All parties have consented to the filing of this brief.

The **Religious Freedom Institute** (RFI) is committed to achieving broad acceptance of religious liberty as a fundamental human right, a source of individual and social flourishing, the cornerstone of a successful society, and a driver of national and international security. Among its core activities, RFI equips students, parents, policymakers, professionals, faith-based organization members, scholars, and religious leaders through programs and resources that communicate the true meaning and value of religious freedom, and apply that understanding to contemporary challenges and opportunities. RFI works to secure religious freedom for everyone everywhere because human dignity and human nature demand it, and human flourishing depends on it.

As organizations that pursue policy goals that encounter varying degrees of political opposition in different areas of the country, *amici* rely on the First Amendment as a bulwark against both direct and indirect attempts by the government to chill or silence their message. The ability to assert First Amendment claims in federal court provides a key protection for *amici*'s activities, serving to prospectively ward off unwarranted investigatory demands and as a means for redress if and when such demands occur. For these reasons, *amici* have an interest in the Court's determining that the First Amendment claims here are ripe, and entering an injunction to prevent the disclosure of donors until the claims are fully adjudicated.

# ARGUMENT

## I.  First Choice's Claims Are Ripe Because It Faces Compelled Disclosure of Its Donors under Threat of Monetary Sanctions.

The State of New Jersey demanded, by subpoena, that First Choice disclose the full name, address, phone number, and place of employment of all donors and donations, other than those provided through a certain website. Add.053, 060. At first, the district court determined that the subpoena itself didn't create a ripe First Amendment Claim, because the attorney general must go to court to enforce its demands. *First Choice Women's Res. Ctrs., Inc. v. Platkin*, Case No. 23-23076, 2024 WL 1550096, at *4 (D.N.J. Jan. 12, 2024).

The state attorney general obliged. He sought, and obtained, an order from the state trial court requiring that First Choice "respond fully to the Subpoena by July 18, 2024." Add.194. Based on that development, this Court dismissed the then-pending appeal as moot, noting that "it is now undisputed that the Appellant's claims are ripe." *See* Add.251.

Failure to comply carries serious consequences, including monetary penalties and potentially being held in contempt of court. See Add.046–047. The attorney general sought these sanctions, but his initial attempt was denied due to the pending appeal. Add.192 (seeking, among other things, an order from the state trial court "adjudging that Defendant has violated the June 18, 2024 Order" and an award of "monetary sanctions"). The state appellate court remanded, with

instructions for the trial court to "consider enforcement of a discovery compliance order requiring defendant to comply with a subpoena." Add.288. The attorney general re-filed and his motion is under consideration, with a decision to be issued by December 2. *See id.*

Despite all of those governmental machinations, the district court determined that First Choice's First Amendment claims still weren't ripe.[2] Add.262. According to the court, it "perceives" a "moment of ripeness for Plaintiff's claims." Add.253. But this "moment of ripeness" will occur, if at all, only when "there is an actual or imminent threat of forced compliance by the state court." Add. 253, 257 n.22.[3]

That decision contravenes existing law. First Choice's claims are ripe.

## A. First Amendment claims ripen upon a credible threat of compelled disclosure.

"First Amendment freedoms need breathing space to survive." *NAACP v. Button*, 371 U.S. 415, 433 (1963) (cleaned up). This breathing space includes the

---

[2] To be fair, the renewed motion to assert movant's rights was filed after the district court issued its decision. Add.191–212.

[3] The court lays out a five-step taxonomy of subpoena-enforcement proceedings under New Jersey law, Add.253, but later notes that "not each stage in the New Jersey subpoena enforcement proceeding necessarily occurs," Add.257. As the court recognizes, "it is possible for the Superior Court to threaten contempt at any point during the proceedings." Add.257.

ability of individuals to come together to pursue common goals. *See NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462-63 (1958).

Compelled disclosure of affiliation with, or donations to, an organization chills the First Amendment rights of the group and its donors. *Shelton v. Tucker*, 364 U.S. 479, 486–87 (1960) ("Public exposure, bringing with it the possibility of public pressures upon school boards to discharge teachers who belong to unpopular or minority organizations, would simply operate to widen and aggravate the impairment of constitutional liberty.").

This is true, as here, when the disclosure is to a hostile government official rather than the public at large. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021) ("Our cases have said that disclosure requirements can chill association even if there is no disclosure to the general public." (cleaned up)).[4]

To maintain a First Amendment claim, a person need not suffer an actual sanction for protected conduct; a "credible threat" ripens a claim. *Susan B. Anthony v. Driehaus*, 573 U.S. 149, 160–61 (2014); *see also Bonta*, 594 U.S. at 603 (deciding First Amendment claim after state attorney general "threatened to

---

[4] The First Amendment claims at issue here distinguish it from the *Smith & Wesson* line of cases, as the district court noted. Add.235 n.7 (noting that *Smith & Wesson* cases did not involve freedom of association); *accord Peachlum*, 333 F.3d at 434 (recognizing that "courts have repeatedly shown solicitude for First Amendment claims because of concern that, even in the absence of a fully concrete dispute, unconstitutional statutes or ordinances tend to chill protected expression among those who forbear speaking because of the law's very existence.").

suspend [the plaintiffs'] registrations and fine their directors and officers").

For good reason. Faced with an unconstitutional demand, many will "merely comply" rather than disobey and risk sanctions. *Peachlum v. City of York*, 333 F.3d 429, 435 (3d Cir. 2003). Or, perhaps worse yet, the government "may choose never to put the law to the test," satisfied by the "chill" on "constitutionally protected conduct" that flows from the existence of the demand itself. *Id.* (citation omitted). So, "in cases involving fundamental rights" even "the remotest threat" of enforcement can ripen a plaintiff's claim. *Id.* (citing *Presbytery of N.J. v. Florio*, 40 F.3d 1454, 1464 (3d Cir. 2007)).

Take *Bonta*. 594 U.S. at 600–02. There, California's attorney general required charities to provide personal information about donors. *Id.* For years, the state "was not particularly zealous about collecting" this information. *Id.* at 603. That changed, and the attorney general sent demand letters to two charities. *Id.* When the charities refused to disclose their donors, the attorney general "threatened to suspend their registrations and fine their directors and officers." *Id.* The charities brought a First-Amendment claim, arguing that disclosure "would make their donors less likely to contribute and would subject them to the risk of reprisals." *Id.* This ripened the claim—even though no state official sought judicial enforcement.

**B.    Actual enforcement, as here, unquestionably ripens a claim.**

Here, the New Jersey attorney general's original demand threatened "contempt of Court and such other penalties as are provided by law." Add.047. This wasn't an idle threat. When First Choice did not disclose donor information, the state's chief law enforcement officer sought—and obtained—a court order requiring First Choice to "respond fully to the Subpoena by July 18, 2024." Add.194 (cleaned up).

After First Choice appealed, the attorney general sought to enforce his rights under the order—specifically, to "order First Choice to fully comply with the Subpoena by immediately producing all non-privileged documents responsive to each Request in the Subpoena." Add.191–212. He also sought an order determining that First Choice "has violated the June 18 Order" and an award of "monetary sanctions." *Id.* at 211. The state trial court initially denied the motion, but the appellate court remanded for a decision on the state's motion by December 2. Add.228.

Here the attorney general's words and actions don't merely "hint" at enforcement. *Thomas v. Anchorage Equal Rts. Com'n*, 220 F.3d 1134, 1140 (9th Cir. 2000). His words and actions don't present a "real threat" of harm, *Presbytery*, 40 F.3d at 1468, or a "threat[]" of fines, *Bonta*, 594 U.S. at 603. Here the threat has

been acted on: the attorney general has sought, and continues to seek, a court order compelling disclosure—and "monetary sanctions" to boot. *See* Add.191.

The chilling effect of these governmental actions are real. Today, "anyone with access to a computer can compile a wealth of information about anyone else." *Bonta*, 594 U.S. at 617 (cleaned up). Disclosure of membership in, or donations to, a politically disfavored organization can (and does) lead to "bomb threats, protests, stalking, and physical violence." *Id.* An organization that is compelled to disclose its donors, members or volunteers will often struggle to overcome the "constant and heavy" pressure on potential donors, members or volunteers who feel the need to avoid politically or socially unpopular associations. *Shelton*, 364 U.S. at 486–87.

So it is here. In reaction to the enforcement actions, First Choice has taken down videos that identify its staff to protect them from threats and harassment. Add.094. This wasn't paranoia; it's a reasonable response to a real risk. *See Bonta*, 594 U.S. at 616–17.

Donors have also been affected. The attorney general seeks precisely the information that donors want to keep anonymous—their "(a) full name; (b) present or last known address; (c) phone number, and when referring to a natural person . . . his or her (d) present or last known place of employment." Add.053. The demand encompasses over 5,000 donors, responsible for over 71% of the value of First Choice's donations during the relevant time period. Add.216.

Fearful of being targeted by hostile government officials, donors would have been "less likely to donate to First Choice if [they] had known information about the donation might be disclosed" to the attorney general. Add.106. Disclosure of donor-related information will "chill [their] desire in the future to affiliate with pro-life organizations" due to "the risk that those protected relationships will be disclosed." *Id.* And these donors perceive the investigation not as an action protecting them from deception by First Choice, but rather "as an imminent threat to [their] protected associational rights." *Id.*

This proves a ripe claim. The problems with *threatened* enforcement of an unconstitutional regulation—chilling, self-censorship, and so forth, *see Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988), *Peachlum*, 333 F.3d at 435—are present here, in the context of an *actual* enforcement.

Stepping back, First Choice's arguments are reasonable and its evidence is compelling. The attorney general has demanded donors' names, addresses, and places of employment. Add.053, 060. He's publicly expressed his hostility to crisis pregnancy centers. Add.012-14. And he's sued First Choice twice to enforce his demands. Who would donate to First Choice under these circumstances? Not those who donated in the past. *See* Add.104-106. And not those who—reasonably—want to see the outcome of First Choice's First Amendment claims before donating.

First Choice's litigating posture also meshes with common sense. When faced with the threat of compelled disclosure, from a law-enforcement officer who has demonstrated hostility to a group's cause, new members will be reluctant to join; donors will be reluctant to donate; and the ability of the targeted group to pursue its goals will be impeded. As with the disclosure requirement in *Shelton*, the attorney general's actions here have placed a "constant and heavy pressure" on First Choice. 364 U.S. at 486-87. Immediate adjudication of First Choice's First Amendment claims is needed to remove that burden and put an end to the chill.

## II. First Choice Meets the Criteria For an Injunction Pending Appeal

Courts have rejected recent attempts to directly or indirectly regulate the First Amendment rights of pregnancy centers. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755 (2018) (rejecting, on First Amendment grounds, a California statute that required crisis pregnancy centers to provide certain notices related to their services); *Nat'l Inst. for Fam. & Life Advocs., et al. v. Letitia James*, Case No. 24-CV-514 (JLS), Dkt. 37 (W. Dist. N.Y. Aug. 22, 2024) (enjoining, on First Amendment grounds, New York's enforcement of consumer-protection statutes against pro-life pregnancy centers, when enforcement against others was predicated on statements related to abortion pill reversal).

New Jersey's attempt here is perhaps more roundabout but fares no better. An injunction pending appeal is warranted when the appealing party "show[s] their

First Amendment claims are likely to prevail, that denying them relief would lead to irreparable injury, and that granting relief would not harm the public interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 16, (2020) (citing *Winters v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). First Choice meets those requirements.

First Choice is also likely to succeed on the merits. To compel disclosure of group affiliation, the government must satisfy exacting scrutiny. *Bonta*, 594 U.S. at 607. "To withstand this scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Id.* (cleaned up). Although exacting scrutiny "does not require that disclosure regimes be the least restrictive means of achieving their ends, it does require that they be narrowly tailored to the government's asserted interest." *Id.* Narrow tailoring "is crucial where First Amendment activity is chilled—even if indirectly." *Id.*

The attorney general cannot satisfy this test here. He professes to be protecting donors that may have been "misled" by certain statements or omissions on First Choice's website. *First Choice Women's Res. Ctrs., Inc. v. Matthew J. Platkin*, Case No. 23-cv-23076, Dkt. 44 at 27 (July 29, 2024). If that's really the case, he's chosen an odd way to go about it—compelling, on threat of monetary sanctions, the names, addresses, and places of employment of over 5,000 donors is not protective. Add.105-06, 095-97, 215-26.

Moreover, even as the allegedly misleading statements were on the website, the attorney general seeks information of those who donated by means other than the website, including through attendance at in-person events and writing checks. *See* Add.060, 104-05. This is the group of donors *least likely* to have been misled by a website. The attorney general has not articulated any basis—misleading statements or otherwise—that would justify investigating them, much less how requiring disclosure of more than 5,000 names, addresses, and places of employment would help such an investigation.

As in *Bonta*, there's a "dramatic mismatch" between the attorney general's stated concern and the disclosure he seeks to compel. 594 U.S. at 612. The narrow tailoring required to compel disclosure is not present here.

If the attorney general's justifications suffice to compel disclosure, consider the consequences. Given enough time, and enough political will, any governmental "strike force" can target a politically disfavored group's website and make hay out of statements that are contained on one page but not another. *See* Add.009. Donor-backed entities are free to—and do—tailor their messages to particular audiences. Compelling the disclosure of thousands of names, addresses, and places of employment predicated on flimsy speculation that someone, somewhere may have been "misled," undermines—if not eviscerates—the protections of associational privacy.

The balance of interests tilts sharply in First Choice's favor. "The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.). First Choice has already pulled videos to shield its staff from a reasonable fear of harassment. Add.094. That itself is irreparable harm.

The same is true with the threatened disclosure. Compelled disclosure of membership in a group is an irreparable harm that "is not remediable on appeal." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1158 (9th Cir. 2010). The disclosure itself is the harm—once disclosure occurs, even if plaintiff wins at trial, "vindication of their [First Amendment] rights will not be merely delayed but also entirely precluded." *Id.* (citation omitted).

That is what First Choice faces here. It is threatened with irreparable harm and is entitled to an injunction to prevent that harm until its First Amendment claims are fully and fairly adjudicated.

By contrast, any harm to the public, the attorney general, or the state would be modest at most. An injunction would protect the identity of donors until the First Amendment issues are adjudicated. Pausing disclosure until after an on-the-merits adjudication causes no harm at all, and is required to secure the fundamental rights at stake.

## CONCLUSION

The Court should determine that First Choice's First Amendment claims are ripe and grant the motion for emergency injunction pending appeal.

Dated: November 22, 2024

/s/ Ilya Shapiro
Ilya Shapiro
THE MANHATTAN INSTITUTE
52 Vanderbilt Ave.
New York, NY 10017
(212) 599-7000
ishapiro@manhattan.institute

/s/ Preston N. Carter
Preston N. Carter
Marcus H. Waterman
GIVENS PURSLEY LLP
601 Bannock Street
Boise, ID 83702
(208) 388-1200
prestoncarter@givenspursley.com
mhw@givenspursley.com
*Attorneys for amici curiae*

## CERTIFICATE OF BAR MEMBERSHIP

I certify that I am a member of the Third Circuit bar. *See* 3d Cir. L.A.R. 28.3(d). I was admitted on November 14, 2024.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 2,797 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (f).

Under 3d Cir. L.A.R. 32.1(c), I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word in a proportionally-spaced typeface, Times New Roman 14-point.

I certify that I scanned the electronic version of this brief using File Checker, version 2014.11.22, and detected no viruses. I further certify that the text of the electronic brief is identical to the text in the paper copies filed with the Court. *See* 3d Cir. L.A.R. 31.1(c).

Dated: November 22, 2024

GIVENS PURSLEY LLP

*/s/ Preston N. Carter*
Preston N. Carter
*Attorneys for Amici Curiae*

**CERTIFICATE OF SERVICE**

I certify that, on November 22, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. All case participants registered as CM/ECF users will be served by the CM/ECF system.

/s/ Preston N. Carter
Preston N. Carter
Marcus H. Waterman
GIVENS PURSLEY LLP
601 W. Bannock Street
Boise, ID 83702
(208) 388-1200
prestoncarter@givenspursley.com
mhw@givenspursley.com

*Attorneys for Amici Curiae*